# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **REGINALD D. WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:06CV967MLM** |
| | ) | |
| **CMS MEDICAL SERVICES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion for Summary Judgment filed by

Defendants CMS Medical Services and Santiago Hallazgo, M.D., Doc. 41, the Motion for Summary

Judgment filed by Defendants Samuel J. Simon, Eugene Stubblefield, and James Murphy, Doc. 44,

and the Motion for Summary Judgment filed by Plaintiff Reginald D. Wilson, Doc. 47. [1] The parties

have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(c). Doc. 28.

## STANDARD FOR SUMMARY JUDGMENT

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The

---

[1] Plaintiff did not file a response to the Motions for Summary Judgment filed by Defendants but rather filed a Motion for Summary Judgment. Doc. 47. Defendants CMS and Dr. Hallazgo filed a Response to Plaintiff's Motion for Summary Judgment. Doc. 48. Defendants Simon, Stubblefield, and Murphy also filed a Response. Doc. 50. Plaintiff did not file a Reply.

substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, the court turns to an analysis of Defendants' motions.

## BACKGROUND and UNDISPUTED FACTS[2]

---

[2] The facts are undisputed unless otherwise stated.

Plaintiff is currently an inmate at the City of St. Louis Justice Center. Defendant Stubblefield is the superintendent of that facility. Defendant Murphy is the Sheriff of the City of St. Louis. Defendant Correctional Medical Services ("CMS") contracts with the Missouri Department of Corrections ("DOC") to provide medical care to inmates through independent contractor physicians. Defendant Dr. Santiago Hallazgo ("Dr. Hallazgo") is a licensed physician who has contracted with CMS and who is practicing at the City of St. Louis Justice Center.

In his Complaint Under the Civil Rights Act, 42 U.S.C. § 1983, Plaintiff alleges that the named Defendants and the City of St. Louis Department of Public Safety did not follow court orders regarding Plaintiff's medical care for a broken jaw; that on October 17, 2005, the Honorable Iris G. Ferguson ordered that Plaintiff have "immediate care of surgery, transportation, med[ication] and any follow-up app[ointments]"; that the Honorable Timothy J. Wilson issued an order on May 18, 2006, regarding Plaintiff's medical care; and that both of these court orders have not been "honored." Plaintiff contends that as a result of the failure of Defendants to provide him with medical care he is at risk of losing about fifty percent of his "facial and other extremities." Applying a liberal construction to Plaintiff's pro se Complaint the court will assume that Plaintiff alleges that his constitutional rights were violated because he was denied access to medical care for serious medical needs in violation of § 1983. See McNally v. Pulitzer Pub. Co., 532 F.2d 69, 73 n.3 (8th Cir. 1999) (holding that a liberal construction should be applied to a pro se complaint).

A radiology report dated October 12, 2005, states that the impression was that Plaintiff had a fracture of the mandible with marked soft tissue swelling. Medical records of this date also reflect that Plaintiff had facial lacerations. Doc. 41, Ex. D-5. Plaintiff was evaluated upon arrival at the St. Louis City Justice Center on October 15, 2005. A nurse noted in the intake evaluation that Plaintiff

3

had a broken jaw and that he had abrasions to his right shoulder, right knee, and left elbow. Doc. 41, Ex. D-1.

Judge Ferguson, of the Circuit Court of the City of St. Louis, ordered on October 17, 2005, that Plaintiff "immediately receive medical care, including but not limited to surgery, medication, and transportation" as well as "follow-up appointments for [his] broken jaw." Judge Ferguson noted in her Order that Plaintiff had an "appointment for surgery on [October 18, 2005]" and ordered that "transportation [] be provided for surgery as determined appropriate." Doc. 41, Ex. D-2. CMS Interdisciplinary Progress Notes reflect that on October 18, 2005, Plaintiff was given ibuprofen for pain and that Plaintiff reported on this date that he had a broken jaw and that he was suppose to go to the hospital to have it fixed that week. Records reflect that Plaintiff received ibuprofen, 400 mg, October 18, 2005, through October 23, 2005. Doc. 41, Ex. D-3.

Dr. Hallazgo evaluated Plaintiff on October 20, 2005, and noted that Plaintiff had sustained a broken jaw on about October 10, 2005, prior to his arrival at the jail, and that he was treated at an independent, non-defendant hospital; that Plaintiff had staples intact to a facial laceration; that examination showed that Plaintiff was alert without distress, had a healing laceration on his right cheek with staples, and had some swelling of the left jaw area of and tenderness of the left index finger; and that Plaintiff was to follow-up with an oral surgeon. Dr. Hallazgo ordered that Plaintiff be referred back to the oral surgeon in compliance with the court order of October 17, 2005 and noted that the staples had been removed from Plaintiff's right cheek. Doc. 41, Ex. D-4.

On November 18, 2005, Plaintiff was evaluated by an oral surgeon, Dr. Sclaroff, of Barnes-Jewish Hospital ("BJC Hospital"). The oral surgeon noted that Plaintiff would be scheduled for surgical repair of his fractured jaw; that Plaintiff was educated in the procedure; and that a call would

be made to the medical unit to schedule the surgery. Plaintiff returned to the medical unit after his appointment with the oral surgeon and was given Amoxicillin, an antibiotic, as prescribed by the oral surgeon, to decrease the risk of infection for his upcoming oral surgery. CMS's records reflect that Plaintiff was given Motrin, 800 mg, on November 17 through November 28, 2005, and that he was given Amoxicillin, 500 mg, November 18, through November 29, 2005. On November 29, 2005, Plaintiff was transported to BJC Hospital for surgery. Plaintiff refused to have the surgery.

On December 30, 2005, Plaintiff was evaluated by a correctional facility dentist for his fractured jaw. The dentist ordered that Plaintiff have x-rays of his left jaw. Plaintiff signed a consent for the x-rays on which form he stated that he "prefer[ed] the Dr. at Barnes Jewish, Dr. Sclaroff, to perform any oral surgery." Doc. 41, Ex. D-8. An x-ray report completed by Hilton I. Price, M.D., of Midwest Radiological Associates, states that a fracture was seen "on the oblique film of the mandible, probably to the left of the mandible" and that "[n]o significant displacement [was] seen." Doc. 41, Ex. D-8.

Plaintiff was re-evaluated on January 13, 2006, by an oral surgeon who noted Plaintiff's left jaw fracture, numbness involving the lip, and the need for surgical repair. The oral surgeon further noted that the surgery would be scheduled.

Dr. Hallazgo reported on January 20, 2006, that he saw Plaintiff on this date; that Plaintiff stated that he was at the appointment to threaten Dr. Hallazgo; and that Dr. Hallazgo then terminated the appointment. A nurse's note of January 25, 2006, states that the BJC Oral Surgery called to state that Plaintiff had consented to oral surgery and that surgery was scheduled for February 15, 2006 at 10:30 a.m. Doc. 46, Ex. L. On February 15, 2006, Plaintiff was transported to BJC Hospital for surgery. Medical records of BJC Hospital reflect that Plaintiff "refused to have surgery today" and

that Plaintiff was advised that the surgery would not be rescheduled.

Records of CMS reflect that Plaintiff was seen on April 10, 2006, by a nurse who noted that Plaintiff said that he never refused surgery and that he wanted to reschedule the surgery to correct his fractured jaw. The nurse further reported that she referred Plaintiff to a physician for further evaluation. Doc. 41, Ex. D-14.

On May 18, 2006, Judge Timothy Wilson, of the Circuit Court of the City of St. Louis, stated in an Order that Plaintiff "suffers from a broken jaw that causes chronic infections" and that "the City of St. Louis Medium Security Institute failed to comply with a valid court order ... directing [Plaintiff] be transported to Barnes-Jewish Hospital for surgery."[3] Judge Wilson ordered the "City of St. Louis Department of Public Safety to transport [Plaintiff] to Barnes-Jewish Hospital for an evaluation with the proper medical authority" and further ordered "if an evaluation determines that surgery is necessary, ... [that] the St. Louis Department of Public Safety [] arrange for the proper surgical procedure in a timely manner." Judge Wilson further ordered that Plaintiff be evaluated at BJC "no later than June 2, 2006." Doc. 41, Ex. D-15.

Records of Midwest Radiology Associates reflect that Plaintiff had an x-ray of his left jaw on May 22, 2006 and that the radiologist's impression was that Plaintiff had a displaced fracture of the left mandible with displacement. Dr. Hallazgo's notes of May 22, 2006 state that he saw Plaintiff on this date; that Plaintiff had a fractured jaw; that Plaintiff had been evaluated by an oral surgeon; that Plaintiff had refused to have surgery; and that Plaintiff was now willing to have the surgery. Dr.

---

[3] The Order of May 18, 2006 states that the previous court order was dated November 17, 2005. As Judge Ferguson's Order is dated October 17, 2005, and as no party refers to an order of November 17, 2005, it appears that the reference to November is a typographical error.

Hallazgo's notes of May 23, 2006 state that Dr. Hallazgo spoke with Dr. Sclaroff, the oral surgeon, on the telephone regarding Plaintiff's willingness to proceed with the surgical repair of his fractured jaw and that Dr. Sclaroff declined to treat Plaintiff due to his twice previously refusing to have the recommended surgery. Doc. 46, Ex. D-17.

On May 25, 2006, Patrick Schommer of the DOC accompanied an associate City counselor to see Judge Wilson. They explained to Judge Wilson that Plaintiff was receiving treatment for his broken jaw and that Plaintiff had refused two scheduled surgeries. By Order dated May 25, 2006, Judge Wilson vacated that portion of the May 18, 2006 Order which stated that the City of St. Louis Medium Security Institute failed to comply with the court order of November 17, 2005, which order directed Petitioner be transported for surgery. Doc. 46, Ex. D, Ex. Q.

Dr. Hallazgo completed a Consultation Request on May 29, 2006 in which he requested that Plaintiff see a "general DDS" to evaluate the option of "reestablishing occlusion," which is the alignment of the upper and lower teeth where the jaw is closed or in contact, with partial or full dentures.[4] Doc. 46, Ex. R.

A Provider Consultation Report reflects that on June 2, 2006, Plaintiff was evaluated by a non-defendant oral surgeon, Dr. Kramer, of Southwest Oral Surgery. Dr. Kramer reported that Plaintiff sustained a left jaw fracture in October 2005; that x-ray showed movement and some healing of the fracture; that Plaintiff had no symptoms of pain and had remarkable movement of the jaw; that two options were discussed with Plaintiff; that one option was for a difficult surgical correction which

---

[4]      Defendants' CMS and Hallazago's Statement of Undisputed facts states that Dr. Hallazgo was referring Plaintiff to an oral surgeon. Dr. Hallazago's Consultation Request of May 26, 2006 states, however, that he was requesting that Plaintiff see a general dentist. Doc. 41, Ex. Dk-18.

would involve breaking Plaintiff's jaw in two areas with surgical reconstruction; that the second option was to re-establish Plaintiff's bite with dental rehabilitation using dental devices such as partial plates and crowns; and that the oral surgeon recommended the non-surgical option because the complications and need for multiple surgeries with the first option were significant. Doc. 41, Ex. D-19; Doc. 46, Ex. S.

A non-defendant site dentist spoke to Plaintiff on June 2, 2006, after he was seen by Dr. Kramer. The non-defendant site dentist's notes state that the dentist asked Plaintiff if he had any questions concerning his consultation with the oral surgeon; that Plaintiff said that he would not discuss his conversation with the oral surgeon; that Plaintiff refused to have the non-defendant site dentist examine him and said "he would not allow any treatment inside the institution"; that Plaintiff refused to discuss any treatment options; that Plaintiff said that if the non-defendant dentist wanted any information he should contact Plaintiff's attorney; and that Plaintiff said that he had a court order and that he wanted to be treated in a private office. Doc. 41, Ex. D-19.

On June 15, 2006, Plaintiff was scheduled to be evaluated by the non-defendant site dentist for discussion of treatment options and to have impressions taken of his teeth for study and assistance in his treatment. The non-defendant site dentist reported on this date that Plaintiff refused to allow an impression to be taken and that Plaintiff said he "will wait until he is released and he will be treated then." Doc. 41, Ex. D-20.

A "Jail Physical Assessment" signed by Dr. Hallazgo states that he saw Plaintiff on October 9, 2006; that Plaintiff did not have pain; and that the condition of Plaintiff's teeth and gums were poor. Doc. 41, Ex. D-21.

Dr. Hallazgo's notes reflect that he saw Plaintiff on October 16, 2006, in response to a referral

for Plaintiff's complaints of red spots on his arms and chest and his wanting eye drops. Dr. Hallazgo reported that when he asked Plaintiff why he was there Plaintiff stated that, "I don't know why I am here." Dr. Hallazgo further reported that Plaintiff said that he had no medical complaints. Doc. 41, Ex. D-22.

In his Motion for Summary Judgment Plaintiff argues that he attempted in good faith to reschedule his medical appointments with an independent non-defendant oral surgeon; that Defendants have not notified him of the surgery twelve hours in advance so that he could fast prior to surgery; that Defendants have delayed his doctor's appointments; and that, as a result, Plaintiff has not been provided with constitutionally adequate medical care and that Defendants have been deliberately indifferent to his serious medical needs.

Defendants CMS and Hallazgo assert in their Motion for Summary Judgment that, although Plaintiff may not have received the care he personally desired, he received constitutionally adequate medical care; that Dr. Hallazgo used his independent, discretionary medical judgment in determining the care he deemed appropriate for Plaintiff; that he did not disregard Plaintiff's needs; and that there is no evidence of a policy or custom of Defendant CMS being involved in Dr. Hallazgo's exercise of judgment; and that, therefore, Defendants CMS and Hallazgo should be granted summary judgment. Defendant CMS further alleges that it cannot be held liable under a theory of respondeat superior.

Defendants Simon, Stubblefield, and Murphy assert in their Motion for Summary Judgment that summary judgment should be granted in their favor based on qualified immunity under federal law and official immunity under State law. Defendants Simon, Stubblefield, and Murphy also argue that Plaintiff has failed to state how they were responsible for Plaintiff's claims of constitutional deprivation; that Plaintiff's claims against them under § 1983 cannot be predicated on respondeat

superior; and that, therefore, summary judgment should be granted in their favor.

## LEGAL FRAMEWORK

**A.     Cause of Action for Deliberate Indifference to Serious Medical Needs:**

The failure to provide medical care to a prisoner violates the Eighth Amendment when it involves a deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-106 (1976) (holding that an inadvertent failure to provide adequate medical care and negligence in treating a medical condition do not necessarily present a constitutional violation; in order to establish a cognizable claim for the failure to provide adequate medical care, a prisoner must set forth facts showing that a defendant acted with "deliberate indifference to [the prisoner's] serious medical needs"). "'Serious medical need' has been defined as a medical need which 'has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir.1991).   "To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs. Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999) (citing  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).  "'Deliberate indifference may be demonstrated by prison [officials] ...  intentionally deny[ing] or delay[ing] access to medical care or intentionally interfer[ing] with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Id.

Inmates do not have a right to "unqualified access to health care." Dulany, 132 F.3d at 1239. Medical malpractice or mere negligence do not establish a constitutional violation.  Roberson, 198

F.3d at 647. Also, mere delay in an inmates's receiving surgery for a serious medical condition does not establish an Eighth Amendment violation where the inmate cannot establish that the delay adversely affected his prognosis. Dulany, 132 F.3d at 1243; Roberson, 198 F.3d at 648. An inmate alleging constitutionally inadequate medical care *due to delay* in medical care must show "both that: (a) the deprivation alleged was objectively serious; and (b) the prison official was deliberately indifferent to the inmate's health or safety." Laughlin v. Schriro, 430 F.3d 027, 929 (8th Cir. 2005) (citing Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir.1995)). An inmate who alleges delay in medical care "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Id. (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir.1997)). Thus, the effect of the delay is a critical element of proof of a constitutional violation. Id.

Additionally, an inmate does not have a right to a particular course of treatment nor does an inmate establish deliberate indifference by showing that another doctor might have ordered a different course of treatment than that actually taken. Dulany, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."). See also Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."). Moreover, an inmate does not establish deliberate indifference by showing disagreement among doctors as to the proper course of treatment. Vaughn v. Lacey, 49 F.3d 1344, 1345 (citing Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that mere disagreement with a course of treatment does not state a constitutional claim cognizable under 42 U.S.C. § 1983). See also Davis

v. Hall, 992 F.2d 151, 153 (8th Cir. 1993) (holding that a dispute over the course of treatment fails to state a claim of deliberate indifference); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Scherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994) (holding that disagreement with a course of treatment does not state a constitutional claim).  A doctor has no constitutional duty to continue the same treatment plan prescribed by a different doctor.  Randall v. Wyrick, 642 F.2d 304, 308 (8th Cir. 1981).  Moreover, a prison doctor does not have to follow the recommendation of an outside consultant; he or she is free to exercise independent judgment in determining the course of treatment to be followed.  Dulany, 132 F.3d at 1240.

Where the treatment received by an inmate may not have been as  extensive as that which would have been given by a private health-care provider, an inmate does not necessarily establish deliberate indifference.  Logan v. Clarke, 119 F.3d 647, 650 (8th Cir. 1997) ("[E]fforts the prison doctors took to allay [the plaintiff's] pain, while perhaps not as extensive as those a private health-care provider might have taken, did not reflect deliberate indifference to his medical needs.").  Where doctors provide medical care in "a reasonable and sensible manner" an inmate does not establish constitutionally inadequate medical care.  Id.

### B. Respondeat Superior:

Respondeat superior cannot form the basis for liability pursuant to 42 U.S.C. § 1983.  Keeper v. King, 130 F.3d 1309, 1313 (8th Cir. 1997).  "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."  Id. (citing Camberos, 73 F.3d at 176).  Thus, to be liable under § 1983 a defendant must be personally involved in the constitutional deprivation at issue.  Id.  "[A] supervisor cannot be held liable for an eighth amendment violation if he or she is neither aware of the conduct nor 'personally

involved in the violation.'" Smith v. Clarke, 458 F.3d 720, 723 (8th Cir. 2006) (quoting Meloy v. Bachmeier, 302 F.2d 845, 549 (8th Cir. 2002); Camberos, 73 F.3d at 176)). Where prison officials contract with outside doctors to furnish medical services the prison officials are not provided "absolute immunity against a prisoner's claim where prison policies are alleged to contribute to the denial of proper medical ... care." Crooks v. Nix, 872 F.2d 800, 803-804 (8th Cir. 1989). A "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability" in a § 1983 claim. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

"[A]lthough the doctrine of respondeat superior does not apply to § 1983 cases, a § 1983 claimant may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct or control the actions of a subordinate who causes the injury." Crooks, 872 F.2d at 804 (citing Hahn v. McLey, 737 F.2d 771, 773 (8th Cir.1984); Pearl v. Dobbs, 649 F.2d 608, 609 (8th Cir.1981)). "Furthermore where the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." Id. (citing West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 2259 (1988)).

APPLICATION OF LAW TO FACTS

A.    **Cause of Action for Deliberate Indifference to Serious Medical Needs**:

The undisputed facts establish that Plaintiff had a serious medical need, as he had a fractured jaw, and that prison officials and medical staff knew of this serious medical need. See Estelle, 429 U.S. at 103-106; Roberson, 198 F.3d at 647; Camberos, 73 F.3d at 176. The undisputed facts establish, however, that Plaintiff was seen by Dr. Hallazgo on numerous occasions; that Plaintiff was

provided with medication for pain and infection; that x-rays were taken of Plaintiff's jaw; that Plaintiff

was referred to a specialist, an oral surgeon; that Plaintiff was scheduled for surgery according to the

recommendation of the oral surgeon; that Plaintiff refused the oral surgery on at least two occasions;

and that after refusing surgery Plaintiff was offered alternative treatment which he also refused. As

such, to the extent any of the named Defendants were responsible for providing Plaintiff medical care

for his serious medical needs, the court finds that they responded to Plaintiff's serious medical needs.

See Roberson, 198 F.3d at 647. Further, these undisputed facts establish that Defendants did not

deny Plaintiff access to medical care for his serious medical needs nor were they deliberately

indifferent to Plaintiff's serious medical needs. Id.

It remains to be determined whether any delay in Plaintiff's being offered surgery or other

treatment for his fractured jaw adversely affected his prognosis. See Dulany, 132 F.3d at 1243;

Roberson, 198 F.3d at 648. First, to the extent that there was a delay in Plaintiff's receiving medical

treatment for his broken jaw, his constitutional rights were not violated merely because of this delay.

See Roberson, 198 F.3d at 647. Second, other than the one month's delay from the court's order of

October 17, 2005 to November 18, 2005, the undisputed facts establish that any delay in Plaintiff's

being offered surgery was his own choice. Third, even during this interval Plaintiff was provided with

medical care by Dr. Hallazgo who noted on October 9, 2006, that Plaintiff was in no pain, on October

16, 2006, that he had no complaints, and on October 20, 2005, that Plaintiff was alert and without

distress. Fourth, the records of specialists who saw Plaintiff do not reflect that he suffered adverse

consequences or was injured as a result of any delay in his receiving surgery. Significantly, the

consultant's report of June 2006 noted that there was some healing of Plaintiff's jaw fracture and that

Plaintiff had no symptoms of pain and had remarkable movement of the jaw. Additionally, Dr.

Hallazgo reported on October 9, 2006, that Plaintiff did not have pain. Thus, Plaintiff has not met his burden to show that any delay in his receiving medical care had a detrimental effect. See Laughlin, 430 F.3d at 929; Roberson, 198 F.3d at 647. ; Dulany, 132 F.3d at 1234.

As stated above, the undisputed facts establish that Plaintiff refused to have oral surgery on at least two occasions. Further, he refused to have impressions of his teeth made to facilitate an option other than surgery for treatment of his fractured jaw. To the extent Plaintiff refused the medical care offered to him because he disagreed with such treatment, his disagreement with the course of medical care provided by Defendants does not establish an Eighth Amendment violation. See Dulany, 132 F.3d at 1239; Long, 86 F.3d at 765; Davis, 992 F.2d at 153; Smith, 910 F.2d at 502; Randall, 642 F.2d at 308.

To the extent Plaintiff contends that he did not see the specialist of his choice, Plaintiff does not establish an Eighth Amendment violation as he did see several specialists. See Dulany, 132 F.3d at 1239 (holding that there is no constitutional right to a particular course of treatment); Logan, 119 F.3d at 650; Nix, 86 F.3d at 765.

Further, to the extent Plaintiff argues that he was not given notice twelve hours in advance of surgery, and that this prevented him from having surgery, Plaintiff's medical records reflect that the only reason he did not have surgery on the scheduled dates was his decision that he did not want the surgery. In any case, he was offered constitutionally adequate alternative medical care in the form of non-surgical treatment. See Dulany, 132 F.3d at 1239.

To the extent that Plaintiff insisted on June 2, 2006, to being treated in a private office, not only had Plaintiff previously refused such treatment but Plaintiff had no right to treatment by a private health care provider. See Logan, 119 F.3d at 650.

To the extent that Plaintiff suggests that Defendants failed to comply with court orders regarding his treatment, Judge Ferguson did not order that Plaintiff have surgery; she only ordered that Plaintiff receive appropriate treatment for his broken jaw, which treatment the court has found above that Plaintiff did receive. Likewise, Judge Wilson did not order that Plaintiff receive surgery but ordered that he be evaluated and that he receive treatment in accordance with the evaluation. Significantly, Judge Wilson acknowledged on May 25, 2006, that the Medium Security Institute complied with his order.

Defendants have provided the court with medical records which verify each and every statement made to support the Motions for Summary Judgment. Under such circumstances Plaintiff cannot rest on mere allegations, as he has done, to support his claim that he received constitutionally inadequate medical treatment. See Dulany, 132 F.3d at 1240. In summary, the court finds that the undisputed facts establish, to the extent that any of the named Defendants were responsible for Plaintiff's medical care, that they were not deliberately indifferent to Plaintiff's serious medical needs. See Estelle, 429 U.S. at 103-106. Rather, the undisputed facts establish that Defendants provided Plaintiff with constitutionally adequate medical care for his broken jaw; not only was he referred to specialists and offered surgery and but he was offered alternative treatment which the specialists suggested. The undisputed facts establish that it was Plaintiff's choice not to accept the constitutionally adequate medical care offered to him. Drawing all inferences in favor of Plaintiff, the court finds not even a scintilla of evidence to support Plaintiff's claim that Defendants were deliberately indifferent to his medical needs. See Raschick, 830 F.2d at 1499. The court finds, therefore, Plaintiff's constitutional rights were not violated and that summary judgment should be granted in favor of Defendants.

**B.      Respondeat Superior:**

The court has found above that Plaintiff did not receive constitutionally inadequate medical care in violation of § 1983.  The court will alternatively consider whether summary judgment should be granted in favor of Defendants CMS, Simon, Stubblefield, and Murphy on the grounds that a cause of action does not lie against them based on respondeat superior. Plaintiff makes only general allegations in regard to Defendants CMS, Simon, Stubblefield and Murphy and has failed to suggest any actions which Defendants CMS, Simon, Stubblefield, and/or Murphy could have undertaken to facilitate Plaintiff's receiving constitutionally adequate medical care. See Keeper, 130 F.3d at 1313. Plaintiff has failed to suggest any actions undertaken by these Defendants which  interfered with his receiving constitutionally adequate medical care.  Indeed, the undisputed facts do not establish that Defendants CMS, Simon, Stubblefield, and/or Murphy were personally involved in providing Plaintiff with medical care. See Smith, 458 F.3d at 723.  As such, respondeat superior is the only basis upon which Plaintiff suggests Defendants CMS, Simon, Stubblefield, and Murphy are liable in the matter under consideration.  As respondeat superior cannot be the basis for liability under §1983, the court finds, alternatively, that summary judgment should be granted in favor of Defendants Simon, Stubblefield, and Murphy. See Keeper, 130 F.3d at 1313.

Because the court has found above that summary judgment should be granted in favor of all Defendants the court need not determine whether summary judgment should be granted in favor of Defendants Simon, Stubblefield, and Murphy on the basis of qualified immunity.  Additionally, the court need not address Defendant CMS's argument that Plaintiff cannot establish that it had policy, custom or practice of failing to provide adequate medical care and that, therefore, he cannot establish liability on CMS's part pursuant to Monell v. New York City Dep't of Social Servs., 436 U.S. 658,

691, 694 (1978) (holding that the language of § 1983 "imposes liability on a government that, under color of some *official policy*, 'causes' an employee to violate another's constitutional rights"; for a municipality to be liable pursuant to §1983, a plaintiff must establish that he or she suffered injury resulting from "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy").

## CONCLUSION

For the reasons stated more fully above, the court finds that the undisputed facts establish that Plaintiff was not denied constitutionally adequate medical care for his serious medical needs and that his Eighth Amendment rights were not violated. The court alternatively finds that Defendants CMS, Simon, Stubblefield, and Murphy cannot be held liable under a theory of respondeat superior. The court finds, therefore, that summary judgment should be granted in favor of Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendants CMS Medical Services and Dr. Hallazgo is **GRANTED**; Doc. 41

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendants Simon, Stubblefield, and Murphy is **GRANTED**; Doc. 44

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Plaintiff Reginald D. Wilson is **DENIED**; Doc. 47

**IT IS FURTHER ORDERED** that a separate Judgment shall issue this same date incorporating this Memorandum Opinion.

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 9 th day of March, 2007.